WO                                                                                                          **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Raymond Wright, | No. CV 1-06-0927-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| G. Shapirshteyn, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's Second Amended Complaint (Doc. # 21), filed in compliance with the Court's February 12, 2009 Order (Doc. # 19). The Court will dismiss the Second Amended Complaint without leave to amend.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). If the Court determines that a pleading could be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the action. See Lopez v. Smith, 203 F.3d 1122, 1127-29 (9th Cir. 2000)

1  (*en banc*). Plaintiff has been given an opportunity to amend his complaint to no avail. His
2  Second Amended Complaint will therefore be dismissed without leave to amend.

## II. Second Amended Complaint

Plaintiff presents two claims for relief against: (1) Pleasant Valley State Prison (PVSP) Senior Psychologist Supervisor G. Shapirshteyn; (2) PVSP Chief Medical Officer C. Barber; (3) PVSP Psychologist T. Gonzalez; (4) Wasco State Prison (WSP) Associate Warden Robles; (5) WSP Correctional Counselor Mearshmarsal; (6) WSP Psychiatric Social Worker Lartique; (7) California Department of Corrections and Rehabilitation (CDCR) Acting Director Scott Kernan; (8) CDCR Facility Captain Hodges-Wilkins; and (9) CDCR Chief Inmate Appeals Coordinator Grannis (Doc. # 21 at 3-4).

Plaintiff claims that his Fourteenth Amendment Due Process and Equal Protection rights were violated when Defendants placed "false, derogatory and uncorroborated documents recommending that [he] be admitted into a mental health program [] in [his] medical file." Plaintiff alleges that when confined at WSP he recalls having an interview with Lartique on October 3, 2000, but was under the impression that the interview was a requirement to be placed in administrative segregation. Plaintiff claims that the interview was "amicable" and at no time did Lartique inform Plaintiff the purpose of the interview was because Robles and Mearshmarsal submitted a staff referral for mental health services.

Plaintiff further alleges Lartique, Robles, and Mearshamarsal conspired to retaliate against him and damage his reputation "out of jealousy of [Plaintiff] being an attractive, athletically inclined, intelligent, and articulate African-American prisoner with a 'chiseled' physique and '8-pack' stomach." Plaintiff also contends that Lartique, Robles, and Mearshamarsal were motivated by racism and retaliated against Plaintiff for filing grievances.

Plaintiff alleges that he did not become aware of these entries in his health record until April 2005. Plaintiff then filed grievances to have the "uncorroborated interdisciplinary progress notes removed from [his] health record" or to place a rebuttal in his health record. Plaintiff alleges that Gonzalez responded to one of Plaintiff's initial grievances and told

1 Plaintiff it would be illegal to remove documents from Plaintiff's medical records instructed
2 him to contact Health Case Manager Alvarez to review his file.  Plaintiff acknowledges that
3 Gonzalez was not responsible for placing the erroneous information in his medical file, but
4 did nothing to remove it.

5 Plaintiff also contends that Shapirshteyn also responded to one of Plaintiff's
6 grievances, stating that he cannot legally remove information from Plaintiff's medical file.
7 Barber, Hodges-Wilkins, and Grannis acting on behalf of Kernan affirmed the denial of
8 Plaintiff's grievances.  Consequently, Plaintiff contends these Defendants "directly
9 participated in depriving [him] of a liberty or property interest without the due process of law
10 [and] inflicted injury to [his] reputation in connection to a federally protected right[.]"

11 Plaintiff seeks damages in the amount of 7 million dollars and an injunction requiring
12 Defendants to remove the false information from Plaintiff's health record.

13 **III.    Failure to State a Claim**

14 **A.    Plaintiff's Due Process/Equal Protection/Stigma-plus Claim**

15 As articulated in the Court's February 12, 2009 Order, both slander and libel concern
16 damage to reputation.  An action for damage to reputation ordinarily "lies . . . in the tort of
17 defamation, not in [42 U.S.C. §] 1983."  Fleming v. Dep't of Public Safety, 837 F.2d 401,
18 409 (9th Cir. 1988).  "To recover damages for defamation under § 1983, a plaintiff must
19 satisfy the 'stigma-plus test.'. . . Under that test, 'a plaintiff must allege loss of a recognizable
20 property or liberty interest in conjunction with the allegation of injury to reputation.'"
21 American Consumer Pub. Ass'n, Inc. v. Margosian, 349 F.3d 1122, 1125-26 (9th Cir. 2003)
22 (quoting Cooper v. Dupnik, 924 F.2d 1520, 1532 (9th Cir. 1991), rev'd on other grounds, 963
23 F.2d 1220, 1235 n.6 (9th Cir. 1992) (*en banc*)).  "There are two ways to state a cognizable
24 § 1983 claim for defamation-plus: (1) allege that the injury to reputation was *inflicted in*
25 *connection* with a federally protected right, or (2) allege that the injury to reputation *caused*
26 *the denial* of a federally protected right."  Herb Hallman Chevrolet, Inc. v. Nash-Holmes, 169
27 F.3d 636, 645 (9th Cir. 1999); see Paul v. Davis, 424 U.S. 693, 703 (1976).  The Court
28 advised Plaintiff that he must identify the federally protected right implicated by Defendants'

1  conduct. Plaintiff has failed to cure this deficiency. Plaintiff has presented two alternative
2  theories regarding why this false information was placed in his medical file. The first is
3  retaliation for filing grievances. But Plaintiff has not articulated *any* specific grievance he
4  filed that precipitated this conduct or how his grievances compelled any Defendant to take
5  this action. Plaintiff absolutely does not contend that he filed grievances against Lartique,
6  Robles, or Mearshamarsal and those grievances compelled them to retaliate against Plaintiff.
7  To the contrary, Plaintiff makes the conclusory assertion that the erroneous information was
8  placed in his file because of "staff retaliation due to [Plaintiff] filing grievances against
9  prison officials, racism, and envy." Plaintiff has wholly failed to allege any facts to support
10 this conclusion and it is insufficient to state a claim.

11 Plaintiff's alternative theory is that Defendants were jealous of Plaintiff's physical
12 attractiveness and this envy motivated them to place false information in his medical file.
13 Even if true, Plaintiff has still not identified which federally protected right was implicated
14 by Defendants' alleged conduct. Plaintiff was advised that a liberal interpretation of a civil
15 rights complaint may not supply essential elements of the claim that were not initially pled.
16 Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Id.
17 Consequently, Plaintiff's failure to identify the specific liberty or property interest implicated
18 by Defendants' alleged conduct is fatal to his claim.

19 Plaintiff has alleged nothing more than his belief that his reputation may be damaged
20 by the presence of allegedly false information in his health record. But injury to reputation
21 alone does not result in a deprivation of a liberty or a property interest protected by the
22 Fourteenth Amendment. Paul, 424 U.S. at 703. Nor has Plaintiff alleged that the defendants
23 acted with intent or purpose to discriminate against the plaintiff based upon membership in
24 a protected class. Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

25 Nor do Plaintiff's allegations against those Defendants who responded to his
26 grievances state a claim. Plaintiff acknowledges that Gonzalez, Shapirshteyn, Barber,
27 Hodges-Wilkins, Grannis, and Kernan did not personally place erroneous information in his
28 medical file. And Plaintiff has not alleged that they had the authority to remove it. Plaintiff

has failed to state a claim against the Defendants who merely responded to his grievances and Plaintiff does not allege they had the authority to take the action he sought. See Williams v. Bennett, 689 F.2d 1370, 1388 (11th Cir. 1982) ("Although each prison employee owes a duty to the inmates affected by his function, that duty must be measured by the scope of discretion and extent of his authority."); Pinto v. Nettleship, 737 F.2d 130, 133 (1st Cir. 1984) ("[P]ersonal liability in damages under section 1983 cannot be based on prison conditions beyond the control of the defendant.").

### B.    Plaintiff's Retaliation Claim

A viable claim of First Amendment retaliation contains five elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Plaintiff's retaliation claim fails for two reasons. First, he has not alleged what specific protected conduct caused Defendants to place erroneous information in his medical file. Second, Plaintiff has not alleged that Defendants' alleged conduct did not advance legitimate penological interests.

### IV.    Dismissal without Leave to Amend

Leave to amend need not be given if a complaint as amended is subject to dismissal. Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. See Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Failure to cure deficiencies by previous amendments is one of the factors to be considered in deciding whether justice requires granting leave to amend. Moore, 885 F.2d at 538.

Plaintiff was informed regarding the deficiencies in his prior pleading and has not introduced any new facts that make his claims viable. The Court finds that further opportunities would be futile. Therefore, the Court, in its discretion, will not grant Plaintiff

further leave to amend and will dismiss the Second Amended Complaint without leave to amend.

**IT IS ORDERED**:

(1) Plaintiff's Motion for Extension of Time to File a Second Amended Complaint (Doc. # 20) is **denied as moot**.

(2) Plaintiff's Second Amended Complaint (Doc. # 21) is **dismissed with prejudice** for failure to state a claim.

(3) The Clerk of Court must enter judgment accordingly, close this case, and indicate on the docket that the dismissal counts as a **strike** under 28 U.S.C. § 1915(g).

DATED this 18th day of June, 2009.

_____
Mary H. Murguia
United States District Judge